```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JAMES R. ANDREWS and ELIZABETH
ANDREWS,

                    Plaintiffs,
                                            MEMORANDUM & ORDER
          -against-                         14-CV-1534(JS)(AKT)

CITIMORTGAGE, INC. and
JOHN DOES 1-10,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:   Kenneth S. Pelsinger, Esq.
                  Kenneth S. Pelsinger, LLC
                  3601 Hempstead Turnpike, Suite 410
                  Levittown, NY 11756

For Defendant:    Larry T. Powell, Esq.
                  Davidson Fink LLP
                  28 East Main Street, Suite 1700
                  Rochester, NY 14614
```

SEYBERT, District Judge:

Plaintiffs James R. Andrews ("Mr. Andrews") and Elizabeth Andrews ("Mrs. Andrews," and together with Mr. Andrews, "Plaintiffs") commenced this action on March 7, 2014 against defendant Citimortgage, Inc. ("Defendant"), seeking declaratory judgment and injunctive relief regarding Defendant's alleged fraud and violations of securities law in connection with its attempt to foreclose on Plaintiffs' real property located in Cedarhurst, New York. Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1). (Docket Entry 5.) For the following reasons, Defendant's motion to dismiss is GRANTED.

BACKGROUND

On March 31, 2006, Mr. Andrews obtained a loan in the amount of $240,000 from ABN AMRO Mortgage Group, Inc. ("ABN"), secured by a mortgage on Plaintiffs' real property located at 211 Oakwood Drive, Cedarhurst, New York (the "Property"). (Compl. ¶¶ 1, 15.) On September 1, 2007, ABN merged into Defendant, and Defendant become the surviving corporation. (Compl. ¶ 19[1].) As a result of the merger, Defendant contends that it is the successor to the mortgage-loan transaction between Mr. Andrews and ABN. (Compl. ¶ 19[2].)

On September 25, 2009, Defendant commenced a foreclosure action in New York State Supreme Court, Nassau County against Plaintiffs, alleging that they defaulted on their mortgage payments (the "Foreclosure Action").[3] (Powell Decl., Docket Entry 5, Ex. B.) Plaintiffs failed to answer or otherwise appear.

---

[1] The Complaint contains two paragraphs numbered "19." This citation refers to the first of those paragraphs.

[2] This citation refers to the second of those paragraphs.

[3] The original complaint did not actually include Mrs. Andrews as a defendant, but the New York State Supreme Court later amended the complaint to substitute Mrs. Andrews in place of the "John Doe" defendant named therein. (See Powell Decl. Ex. D at 4.) Pages numbers of exhibits referenced herein refer to the page numbers supplied by the Electronic Case Filing system.

Accordingly, by Order of Reference dated July 7, 2010, the New York State Supreme Court found that Plaintiffs were in default and appointed a referee to compute the amount due under the loan and mortgage.[4] (Powell Decl. Ex. D at 4.) On October 7, 2013, the New York State Supreme Court entered a Judgment of Foreclosure and Sale of the Property (the "Foreclosure Judgment"). (Powell Decl. Ex. E.)

Plaintiffs have not contested or appealed the Foreclosure Judgment in state court. (Powell Decl. ¶ 8.) Rather, Plaintiffs commenced the instant action, seeking: (1) a declaratory judgment that Defendant "never had any rights, title, interest or subject matter jurisdiction over the subject mortgage and note because it [sic] was never properly or lawfully transferred or conveyed to [Defendant]," (Compl. ¶ 40); (2) an injunction "restrain[ing] and enjoin[ing] [Defendant] from continuing the prosecution of the [Foreclosure Action] and proceeding with the public auction of the sale of the [Property],

---

[4] Section 1321 of the New York Real Property Actions and Proceedings Law states in relevant part that "[i]f the defendant [in a foreclosure action] fails to answer within the time allowed," the court, upon motion of the plaintiff, "shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff and to such of the defendants as are prior incumbrancers of the mortgaged premises." N.Y. REAL PROP. ACTS. § 1321(1). A motion for the appointment of a referee to compute the amount due on a mortgage is "a preliminary step towards obtaining a judgment of foreclosure." Home Sav. of Am., F.A. v. Gkanios, 230 A.D.2d 770, 771, 646 N.Y.S.2d 530, 531 (2d Dep't 1996).

3

or from otherwise taking any steps to deprive Plaintiffs of their ownership interest [during] the pendency of this action, and permanently thereafter," (Compl. ¶ 52); and (3) an order under the New York Real Property Actions and Proceedings Law ("RPAPL"), N.Y. REAL PROP. ACTS. § 1301 et seq., "expunging, extinguishing, setting aside, discharging, releasing and cancelling" the mortgage, (Compl. ¶ 67).

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction. (Docket Entry 5.) This motion is currently pending before the Court.

## DISCUSSION

Defendant argues that this action should be dismissed for lack of subject matter jurisdiction because: (1) Plaintiffs are essentially appealing a state court judgment of foreclosure in federal court, which is prohibited by the Rooker-Feldman doctrine, (Def.'s Br., Docket Entry 5-1, at 4-7); and (2) there is no federal jurisdictional basis for this action, (Def.'s Br. at 7-8). The Court agrees with Defendant on both grounds. The Court will first set forth the applicable legal standard before addressing Defendant's arguments more specifically.

I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v.

4

United States, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

II. Subject Matter Jurisdiction

"A party seeking relief in the district court must at least plead facts which bring the suit within the court's subject matter jurisdiction." Capistran v. Carbone, No. 11-CV-2531, 2012 WL 1247117, at *1 (E.D.N.Y. Apr. 13, 2012) (quoting Espada v. N.Y. Bd. of Elections, No. 07-CV-7622, 2007 WL 2588477, at *2 (S.D.N.Y. Sept. 4, 2007)). Generally speaking, a district court's subject matter jurisdiction is limited to the grounds set forth in 28 U.S.C. §§ 1331 and 1332. Under these statutes, jurisdiction arises where a "federal question" is presented, see 28 U.S.C. § 1331, or where the parties are of diverse citizenship and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332. As discussed below, neither basis for jurisdiction exists in this case.

   A. Diversity Jurisdiction

"[F]or a case to come within [diversity jurisdiction under 28 U.S.C. § 1332] there must be complete diversity and that

diversity is not complete if any plaintiff is a citizen of the same state as any defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990). Plaintiffs argue that diversity of citizenship exists in this case because Plaintiffs are New York residents and Defendant's principal place of business is in Missouri. (Pls.' Opp. Br., Docket Entry 20, at 6[5].) However, "[a] corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business."). In the Complaint, Plaintiffs allege that Defendant is a "banking corporation organized under the laws of the State of New York." (Compl. ¶ 4.) Thus, by Plaintiffs' own admission, complete diversity of citizenship does not exist in this case. Plaintiff therefore cannot rely on 28 U.S.C. § 1332 for subject matter jurisdiction.

B. Federal Question Jurisdiction

Federal question jurisdiction is also lacking. Federal question jurisdiction is set forth in 28 U.S.C. § 1331, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under

---

[5] Plaintiffs' counsel failed to include page numbers for their opposition brief. The Court will therefore refer to the page numbers supplied by the Electronic Case Filing system.

6

federal law only where "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690, 126 S. Ct. 2121, 2131, 165 L. Ed. 2d 131 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27–28, 103 S. Ct. 2841, 2856, 77 L. Ed. 2d 420 (1983)); see also Chan Ah Wah v. HSBS Bank PLC, No. 13-CV-4789, 2014 WL 2453304, at *2 (S.D.N.Y. June 2, 2014) (stating that federal question jurisdiction arises "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal] laws or th[e] Constitution." (alterations in original) (internal quotation marks and citation omitted)).

Here, the Complaint mentions that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1337(a), (Compl. ¶ 1), but it does not refer to this statute again, nor does it contain any specific allegations or facts as to how Defendant violated this statute. Plaintiffs' mere reference to Section 1337 does not establish federal question jurisdiction. See Chan Ah Wah, 2014 WL 2453304, at *2 ("Merely invoking the existence of some federal statute, without presenting facts or alleging a claim related to that statute, does not establish federal question jurisdiction.").

7

Additionally, although the Complaint includes a declaratory judgment claim pursuant to 28 U.S.C. § 2201, "'[t]he operation of the Declaratory Judgment Act is procedural only.'" Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 66 (2d Cir. 2012) (quoting Skelly Oil v. Phillips Petroleum, 339 U.S. 667, 671, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950)). Thus, the Declaratory Judgment Act "'does not provide an independent basis for jurisdiction; jurisdiction must be founded separately on either federal question or diversity.'" Williams v. Bank of N.Y. Mellon Trust Co., No. 13-CV-6814, 2015 WL 430290, at *4 (E.D.N.Y. Feb. 2, 2015) (quoting Zyburo v. Cont'l Cas. Co., No. 13-CV-6438, 2014 WL 6603877, at *1 (S.D.N.Y. Nov. 21, 2014)). Here, Plaintiffs seek a declaration that Defendant did not lawfully obtain the mortgage and loan from ABN in part because Defendant allegedly "converted" the loan to stock, thereby committing "a form of securities fraud," which Plaintiffs refer to as "double dipping." (Compl. ¶¶ 33-36.) However, a plaintiff seeking to invoke federal question jurisdiction "must cite some particular federal statute or section of the Constitution or a treaty that confers jurisdiction on a district court." Siwula v. Res. Ctr., No. 86-CV-0077, 1987 WL 8389, at *1 (W.D.N.Y. Mar. 24, 1987). Plaintiffs do not identify any particular federal securities law that Defendant violated, and the Court will not comb through federal securities laws to determine whether the allegations of

the Complaint implicate a particular federal statute. Thus, the Complaint does not present a basis for federal question jurisdiction.

In sum, because this Court lacks both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332, this case is DISMISSED for lack of subject matter jurisdiction.

III. Rooker-Feldman

Even if diversity or federal question jurisdiction were present here, the Court would not exercise jurisdiction because of the Rooker-Feldman doctrine. Under Rooker-Feldman, federal district courts are prohibited from exercising subject matter jurisdiction "over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment, or asserts claims that are inextricably intertwined with state court determinations." Park v. City of N.Y., No. 99-CV-2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (internal quotation marks and citations omitted).

There are four requirements for the application of Rooker-Feldman: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district

9

court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (brackets and internal quotation marks and citations omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." Id.

Here, the procedural requirements are clearly met. Plaintiffs lost in state court before the commencement of this action when the New York State Supreme Court entered the Foreclosure Judgment on October 7, 2013. (Powell Decl. Ex. E.) Both substantive requirements are also met. There is no doubt that Plaintiffs complain of injuries caused by the Foreclosure Judgment and that the purpose of this action is to undo the Foreclosure Judgment. The Complaint specifically asks the Court to enter an injunction "restrain[ing] and enjoin[ing] [Defendant] from continuing the prosecution of the [Foreclosure Action] and proceeding with the public auction of the sale of the [Property], or from otherwise taking any steps to deprive Plaintiffs of their ownership interest [during] the pendency of this action, and permanently thereafter." (Compl. ¶ 52.)

Nonetheless, Plaintiffs argue that Rooker-Feldman does not apply because they "are not seeking to vacate [the Foreclosure Judgment], but rather are seeking a return of mortgage payments made pursuant to the illegal securitization of the mortgage note."

10

(Pls.'s Opp. Br. at 4.) However, Plaintiffs' claim for the return of mortgage payments can only be construed as alleging injuries that occurred as a result of the Foreclosure Judgment, because that claim depends on the validity of the loan and mortgage--an issue "which has already been resolved against [Plaintiffs] in the [Foreclosure Action]." Done v. Option One Mortg., No. 09-CV-4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011). Thus, Plaintiffs' claims are "inextricably intertwined" with the Foreclosure Action and "'would effectively require [this Court] to vacate the [Foreclosure Judgment] issued by the [New York State Supreme Court].'" Estate of Keys v. Union Planters Bank, N.A., 578 F. Supp. 2d 629, 637 (S.D.N.Y. 2008) (quoting Grumbkow v. Greenpoint Bank, 132 F. App'x 913, 914 (2d Cir. 2005)); see also Done, 2011 WL 12607820, at *7 ("Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment. Therefore, Rooker-Feldman clearly applies."); Goldberg v. Roth, No. 99-CV-11591, 2001 WL 1622201, at *5 (S.D.N.Y. Dec. 17, 2001) ("Plaintiff cannot make an end run around the Rooker-Feldman doctrine and into federal court, however, through the mere assertion of new and baseless claims to supplement the old.").

Plaintiffs also argue that their claims are not "inextricably intertwined" with the Foreclosure Action because they "never even answered the Complaint in the foreclosure action,

11

and thus, never raised any defenses or litigated that action in any manner." (Pls.' Opp. Br. at 4.) However, it is well settled that "'a federal plaintiff cannot escape the Rooker-Feldman bar simply by relying on a legal theory not raised in state court.'" Lajaunie v. Samuels & Son Seafood Co., --- F. Supp. 3d ----, 2014 WL 7190922, at *4 (S.D.N.Y. Dec. 12, 2014) (quoting Hoblock, 422 F.3d at 87); see also Hoblock, 422 F.3d at 86 ("Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from Rooker-Feldman if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed."). Moreover, the Rooker-Feldman doctrine applies equally to state court judgments obtained by default. See Ballyhighlands, Ltd. v. Bruns, 182 F.3d 898, 1999 WL 377098 (Table) (2d Cir. 1999) (unpublished opinion) ("Rooker-Feldman applies to default judgments just as it does to other types of judgments."); Lajaunie, 2014 WL 7190922, at *4 ("[C]ourts have repeatedly applied Rooker-Feldman to state court default judgments."); Smith v. Wayne Weinberger, P.C., 994 F. Supp. 418, 424 (E.D.N.Y. 1998) ("[T]o adjudicate [the plaintiff's] conversion claims would run afoul of the Rooker-Feldman doctrine, since his complaint is, at the very least, an indirect challenge to the default judgment of foreclosure entered in the New York Supreme Court.").

Finally, Plaintiffs argue that Rooker-Feldman does not apply because Defendant allegedly obtained the Foreclosure Judgment through fraud. However, in the Second Circuit, "any attack on a judgment of foreclosure is . . . barred by the Rooker-Feldman doctrine." Feinstein v. The Chase Manhattan Bank, No. 06-CV-1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006) (emphasis added) (collecting cases); accord Gonzalez v. Ocwen Home Loan Servicing, --- F. Supp. 3d ----, 2015 WL 778432, at *6 (D. Conn. Feb. 25, 2015) (collecting cases). "This even includes challenges to a judgment of foreclosure that were allegedly procured by fraud, as [P]laintiffs have alleged herein." Niles v. Wilshire Inv. Grp., LLC, 859 F. Supp. 2d 308, 334 n.24 (E.D.N.Y. 2012); accord Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (per curiam) ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars [the plaintiff's] claim. . . . [since] [t]his would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error."); Gonzalez, 2015 WL 778432, at *6 ("'Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker-Feldman will divest the federal court of jurisdiction.'" (quoting Astoria Fed. Sav. & Loan Ass'n v. Arcamone, No. 12-cv-0230, 2012 WL 4355550, at *2 (D. Conn. Sept. 18, 2012)); Parra v. Greenpoint Mortg., No. 01-

CV-2010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove [her] claims from the ambit of Rooker-Feldman." (alterations in original) (internal quotation marks and citation omitted)), aff'd sub nom., Parra v. Wilshire Credit Corp., 53 F. App'x 164 (2d Cir. 2002).

In sum, Plaintiffs lost in state court; the Foreclosure Judgment was rendered before the instant action was commenced; Plaintiffs seek to undo the Foreclosure Action; and they complain of injuries caused by the Foreclosure Judgment. Accordingly, even if subject matter jurisdiction existed in this case, the Court not would not exercise jurisdiction because of the Rooker-Feldman doctrine.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket Entry 5) is GRANTED, and this action is DISMISSED for lack of subject matter jurisdiction. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  31 , 2015
       Central Islip, NY